## SUPREME COURT OF THE UNITED STATES.

THE FIRST NATIONAL BANK OF TROY, appellant, agt. MAR-
VILLE W. COOPER, WALTER VAIL, WILLIAM B. S. GAY
AND CHARLES T. RANDALL, formerly Partners composing
the firm of COOPER, VAIL & Co., and SHEPARD TAPPIN,
Assignee of the TROY WOOLEN COMPANY.

*Bankrupt act — bill filed under section 2 — discretionary power of circuit
court — jurisdiction — review of.*

Where a bill is filed in the circuit court by a contesting creditor, under
section 2 of the bankrupt act, to *review* a decision of the district court refus-
ing to expunge a debt under section 22, the circuit court, under its
*discretionary power*, may refuse to hear the case upon the merits.

If the bill is filed with a double aspect, the circuit court has no jurisdiction
to hear it as an *original* bill, although it is alleged in the bill that the
creditor had no debt, and the assignee knew that fact, but neglected to
appeal from the decision of the district court allowing such alleged debt.

To sustain such bill it is necessary to allege fraud and collusion between
the assignee and the creditor. *Negligence*, on the part of the assignee, is
not sufficient.

*October Term*, 1873.

APPEAL from the circuit court of the United States for the
northern district of New York.

*E. F. Bullard*, counsel for appellant.

The defendants, Cooper & Co., demur, and claim that the
circuit court has no jurisdiction.

The bill was filed with a double aspect:

1st. As an original bill.

2d. To review under section 2.

*First.* The circuit court has full *original* jurisdiction under subdivision 3 of section 2, bankrupt law.

(*a*) The order of district court allowing the debt gives Cooper & Co. an adverse interest touching the property of the bankrupt.

It is an apparent lien upon the estate.

*Second.* The circuit court being a court of equity, with *general jurisdiction*, it has power to set aside said debt, and also the order of the district court, without invoking the special jurisdiction under section 2 of bankrupt law (*Dobson* agt. *Pearse*, 12 *N. Y.*, 156; *see cases cited, pages* 162 *to* 164; *In re Richardson*, 2 *N. B. Register*, 74; *approved, Jobbins* agt. *Montague*, 6 *id.*, 517).

*Third.* "The court of chancery has inherent jurisdiction in matters of trust and confidence" (*Tiffany & B. on Trusts*, 377).

(*a*) Equity will interpose to prevent a failure of justice and compel a performance of a trust (2 *Story Eq. Jur.*, § 961).

(*b*) Courts of equity have power to remove a trustee, independent of any statute (*People* agt. *Norton*, 9 *N. Y.*, 178; *Leggett* agt. *Hunter*, 19 *N. Y.*, 445).

(*c*) "Circuit courts have same power to grant relief under state laws as under those of the United States when the proper parties are before them" (*Boyce*, 30, *citing* 6 *McLean*, 395).

*Fourth.* Circuit courts have *general jurisdiction in equity* under the constitution, independent of any statute.

Article 3, section 2, provides that the *judicial power* shall extend to all cases in *law and equity* under the constitution and laws of the United States, &c.

In bankrupt cases the supreme court has *appellate* jurisdiction under same section.

Section 1 provides that "the *judicial power* shall be vested in one supreme court, and in such inferior courts as congress may establish."

As congress has established but two inferior courts (circuit

and district), one or both of them must be vested with this power in law and equity under section 2 of the constitution, otherwise no court is provided in which it does exist, as the supreme court can only have *appellate* jurisdiction.

We submit that the moment congress established the circuit court that moment jurisdiction became vested in it by force of the constitution.

The bankrupt court is a special creature of the statute (*Clark* agt. *Binninger*, 3 *B. R.*, 129).

*Fifth.* This court has full jurisdiction, under subdivision 1 of section 2 of the bankrupt law, to review and correct the error of the district court.

(*a*) Because such power is expressly given by that section (*Sweat* agt. *R. R. Co.*, 5 *B. R.*, 234; *In re Alexander*, 3 *B. R.*, 6).

(*b*) Because no appeal was taken under section 8 by the negligence or fraud of the assignee (*Bate* agt. *Graham*, 11 *N. Y.*, 237; *Hagan* agt. *Walker*, 14 *Howard*, 29).

*Sixth.* We submit, also, that this court has the right on this appeal to reverse the decree below and remit the case to be tried upon its merits.

In *Morgan* agt. *Thornhill* the circuit court did hear and decide the case upon the merits, and, therefore, no error was committed; and hence this court could not reverse.

That review was also upon *petition* and not by *bill*, as in the case at bar (*Mead* agt. *Thompson*, 15 *Wallace*, 635; *Insurance Co.* agt. *Comstock*, 16 *Wallace*, 258, *were of the same character*).

What was said by the court in those three cases would not apply to the case at bar, because it is a regular suit.

In *Marshall* agt. *Knox* (16 *Wallace*, at *page* 555), Mr. justice BRADLEY says:

"But, regarded as a bill of review, we could not, according to our own decision in *Morgan* agt. *Thornhill*, entertain an appeal from the decision of the circuit court in the case."

This is a regular suit, and, therefore, an appeal does lie

under section 9 of the bankrupt act, and also under the judiciary act.

The fact that the circuit court did not pass upon the *merits* of the case is a reason why this court cannot make a *final* decree, but it is no reason why the erroneous decree below should not be reversed.

The defendants are not allowed to say that they have procured an erroneous decree as a reason to prevent its reversal (*The People* agt. *N. Y. C. R. R. Co.*, 29 *N. Y.*, 418).

*By the Court,* STRONG, *J.*—The demurrer presents the question whether the complainant's bill sets forth any equity sufficient to justify the court in granting the relief sought against the defendants. The object of the bill is to procure a reversal of an order of the district court made under the following circumstances: On the 4th day of February, 1870, the Troy Woolen Company was adjudged a bankrupt by that court, and on the 11th of March, 1870, Shepard Tappin, one of the defendants, became the assignee. Soon after, the other defendants, Cooper, Vail & Co., proved a debt against the bankrupt amounting to $67,029.81, and on the 24th day of July, 1870, they filed the probate with the assignee. Subsequently, on the 29th of November next following, on petition of the appellants, who had also proved a debt against the bankrupt, the district court made an order allowing them and the assignee to contest the validity of the claim of Cooper, Vail & Co. It was then referred to Worthington Frothingham, Esq., to take the proofs and accounts respecting the claim, to determine its legality and amount, and to report his conclusions to the court. Permission was also given to the assignee, and to any creditor of the bankrupt, if they desired to contest the claim, to attend the proceedings before the referee; and it appears that the complainants did attend, that evidence in opposition to the claim was submitted, and that the referee reported the whole of it as due from the bankrupt. To his report joint exceptions were filed on behalf of

the complainants and the assignee, and argued in the district court upon the evidence taken before the referee. These exceptions were overruled, and on the 13th of July, 1871, the court made an order allowing the debt as proved by Cooper, Vail & Co., and directing the complainants to pay the costs and expenses of the reference. The bill, after setting forth these facts, makes a general averment that Cooper, Vail & Co. have no legal claim against the bankrupt; that they have fraudulently proved their claim; that they knew this when the exceptions were taken to the referee's report as well as when the court made the decree allowing the debt, and that it was thus proved before the district court. The complainants then aver that the decree was erroneous, because there was no legal debt due by the bankrupt to Cooper, Vail & Co.; because the evidence before the court proved that there was no such debt, and because the court should have disallowed it.

This is one aspect of the bill. The complainants, however, further charge that the assets in the hands of Cooper, Vail & Co. are insufficient to pay fifty cents on the dollar of the legal debts of the bankrupt, even if the claim of Cooper, Vail & Co. be disallowed; and they aver that the assignee refused to appeal from the decision of the district court, or to allow the creditors to appeal in his name, stating that he was advised the complainant had a right to have the decree reviewed under section 2 of the bankrupt act, and that if the creditors desired a review they must take that course. They then charge that the assignee was guilty of neglect of duty in omitting to appeal from the decree of the district court, and they renew the averment that the bankrupt is not, and never was, liable for the debt proved against him by Cooper, Vail & Co., or for any part of it. It is upon these facts they base the prayer of the bill, which is that the decree made by the district court may be "reviewed, examined, revised and annulled, and that the proof of debt filed with

the assignee by Cooper, Vail & Co. may be rejected and expunged."

No doubt, when an executor or administrator colludes with a fraudulent claimant against a decedent's estate, and refuses to take steps to resist the claim, any person interested in the estate may maintain an action against such fraudulent claimant and the executor or administrator for the purpose of contesting the claim. Bills in equity of this nature have been maintained. And if an assignee in bankruptcy, with knowledge, or with reason to believe, that one claiming to be a creditor of the bankrupt had proved a debt against the bankrupt's estate which had no existence, or which was tainted with fraud, should neglect or refuse to contest the allowance of such debt, there is no reason why the other creditors, having proved their debts, should not be permitted to interpose and seek the aid of a court of equity to annul the allowance. But the bill before us presents no such case. The assignee has resisted the allowance of the debt claimed by Cooper, Vail & Co.; he took part with the appellants in contesting the debt before the referee to whose consideration it was submitted. He joined with them in filing exceptions to the report allowing the claim. There is no averment of any collusion between him and the claimants. The bill exhibits nothing which ought to cast discredit upon his fidelity to his trust. The referee decided against the appellants after hearing all the evidence they had to submit. The district court reviewed his decision upon exceptions taken to it, and came to the same conclusion, allowing the debt claimed by Cooper, Vail & Co. Nor is it pretended that any new evidence exists which ought to lead the circuit court to any other conclusion than that at which the district court arrived. In such a state of facts it cannot be maintained that it was the duty of the assignee to enter an appeal to the circuit court or even to allow an appeal in his name. After two trials, in which he was aided by the appellants, after all the evidence had been made use of in opposition to the claim which could

then be produced, or which can now be obtained, and after two decisions allowing the claim, he may well have concluded, as he did, that his duty to his trust did not require either expenditure of the bankrupt's estate in further litigation, or the delay which might have been consequent upon an appeal. The bill, then, wholly fails in exhibiting any equity against the assignee.

It is equally without equity as against Cooper, Vail & Co. It is true the averment is made that they have no legal or valid claim against the bankrupt, and that their claim was fraudulently proved and made, but there is no allegation wherein the fraud consists, or of any step they have taken in the assertion of their claim which they might not lawfully take. Such a general averment of fraud can be no foundation for an equity. Moreover, it is apparent that the only fraud intended in the averments of the bill is the assertion of a claim which the complainants insist is not sufficiently sustained by evidence. They objected to the claim at the outset. They appealed to the district court, and they were allowed to contest its validity. It was at their instance a referee was appointed to examine and report upon it; before that referee they went to trial, without objection. When defeated they brought the contest into court and renewed it there, but unsuccessfully. And they do not now allege that in either of these trials there was anything unfair, or that Cooper, Vail & Co. were guilty of any fraud in maintaining their claim, other than the assertion of its existence, or that they themselves made any mistake, or that they have any other case now than they had urged before the referee and the district court. Their only ground of complaint is that the referee and district court came to a different conclusion from that which they think should have been adopted. The court thought the evidence established the existence of a debt, due Cooper, Vail & Co. They are of a different opinion. They think the evidence did not establish the existence of such a debt, and, therefore, they have filed this bill in the

circuit court to annul the action of the district court. In effect, they are seeking a new trial of a question of fact which has been decided against them, and this without averring anything more than that the district court drew a wrong conclusion from the evidence. Very plainly, they have made no case for equitable interference. There are some bills in equity which are usually called bills for a new trial; they are sustained when they aver some fact which proves it to be against conscience to execute the judgment obtained ; some fact of which the complainant could not have availed himself in the court when the judgment was given against him, if a court of law, or of which he might have availed himself, but was prevented by fraud or accident unmixed with any fault or negligence of his own. But a court of equity will never interfere with a judgment obtained in another court, because it is alleged to have been erroneously given, without more. And such is, substantially, this case.

But though the bill is destitute of equity, when considered as an original bill, it is contended that it may be regarded as an application for the exercise of the supervisory jurisdiction of the circuit court authorized by the second section of the bankrupt act. That section declares that "the several circuit courts of the United States, within and for the districts where the proceedings in bankruptcy shall be pending, shall have a general superintendence and jurisdiction of all cases and questions arising under this act, and, except when special provision is otherwise made, may, upon bill, petition or other process of any party aggrieved, hear and determine the case (as) in a court of equity." The complainants, having proved their debt against the bankrupt, contend that they may be considered parties aggrieved by any order of the district court allowing the probate of other debts against the same bankrupt, when the assignee refuses to appeal from the order, or allow an appeal to the circuit court. It is true their bill was not filed in the circuit court until about four months and a half after the order complained

of was made. But the act of congress prescribes no time within which the application for a review must be presented. An appeal is required to be taken within ten days. Not so with a petition or bill for a review. Undoubtedly the application should be made within a reasonable time, in order that the proceedings to settle the bankrupt's estate may not be delayed; but neither the act of congress, nor any rule of this court, determines what that time is. At present, therefore, it must be left to depend upon the circumstances of each case. Perhaps, generally, it should be fixed in analogy to the period designated within which appeals must be taken (*Littlefield* agt. *The Delaware and Hudson Canal Company*, *Bank. Reg.*, *vol.* 4, *p.* 77). It is, however, to be observed that the bill does not charge any fraudulent collusion between the assignee and Cooper, Vail & Co. At most, it charges neglect of duty by the assignee in omitting to contest the debt claimed, and in failing to appeal from a decree of the district court allowing the debt. Whether this presents a proper case for a review under the second section of the bankrupt act need not now be decided. For should it be conceded that the complainants had a right to apply to the circuit court for a review of the order of the district court, and conceded also that this bill may be regarded as such an application, the question would still remain whether the court erred in dismissing it. Had the court, in the exercise of its superintending jurisdiction, heard the case and decided it, as the district court did, the decision would have been final, and no appeal could have been taken to this court (*Morgan* agt. *Thornhill*, 11 *Wallace*, 65; *Tracy* agt. *Almyer*, 46 *New York*, 598). True, if the court had decided that it had no jurisdiction to review, this court might have entertained an appeal, not for the purpose of reviewing, but for the purpose of correcting an erroneous decision respecting the power of the circuit court, and enabling the complainants to be heard on their application (*People* agt. *New York C. R. R. Co.*, 29 *New York*, 418). But it does not appear that this bill was dismissed because

First National Bank of Troy agt. Cooper.

the court thought it had no power to review the action of the district court at the suit of these complainants. On the contrary, it rather appears the bill was dismissed, because it presented no case that called for the exercise of the superintending jurisdiction of the court. The statute, though conferring the power, does not make it obligatory upon the circuit court to retry every decision of the district court which a creditor, supposing himself aggrieved, may ask the court to retry. And it may well be that when, as in this case, a question of fact has been twice tried, and twice decided in the same way; when it is not averred that there has been any collusion between the assignee and the creditor who has proved a debt, or that the complaining party has any evidence which he has not already submitted, or that he has been hindered by any accident or fraud from presenting his case as fully in the district court as he can in another tribunal; when the substance of all he alleges is that, in his opinion, the court should have determined the facts differently, it may well be that the circuit court, in the exercise of its discretionary power, looking also at the delay of the application, may properly conclude that no sufficient case is presented calling for a retrial of the facts.

We do not perceive, therefore, in the action of the circuit court, anything that requires correction, and the decree is affirmed.